UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ARSHAD HAMZA ALJAMAILAWI,

              Plaintiff,              Case No. 1:17-cv-933

v.                                      Honorable Janet T. Neff

DANNY JOHNSON et al.,

              Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burke and McDonald. The Court will serve the complaint against Defendants Johnson and Keeler.

**Discussion**

I.     **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan, and on a bus driven by ECF officials that stopped at the Pugsley Correctional Facility (MPF) in Kingsley, Michigan. Plaintiff sues former ECF Correctional Officer Danny Johnson; ECF Correctional Officer N. Keeler; MDOC Hearings Officer S. Burke; and ECF Hearings Investigator (unknown) McDonald.

Plaintiff alleges that, on October 22, 2015, he was shackled in leg irons, belly chains, and cuffs, and placed in an MDOC transport bus with seven other prisoners. They travelled from ECF to Pugsley Correctional Facility to pick up other prisoners who were being transported to the St. Louis hub. When they arrived at MPF, Officer Siebolt went inside the facility, leaving Defendant Officer Johnson alone with the prisoners. Defendant Johnson called back into the bus, "Who is back there running their d*ck suckers?" (Compl., ECF No. 1, PageID.2.) Plaintiff insolently responded, "Your wife." (*Id.*) Johnson threatened, "Come up here an[d] say that!" (*Id.*) Defendant Johnson then unlocked the gate separating the cab from the prisoners. Armed with a holstered gun, came inside the prisoner area, ordered the other prisoners to the back of the bus, and punched Plaintiff in the face, causing injury and pain.

What happened next is somewhat vaguely described by Plaintiff: "Defendant Johnson then, with no legitimate threat to his safety present and with the sole intent to inflict pain, sprayed gas in Plaintiff's face." (*Id.*) Defendant Johnson then radioed the MPF staff and "falsely"

2

reported that Plaintiff had attacked Johnson. (*Id.*) Johnson apparently was removed from bus detail, and he subsequently made the following report:

> During an MDOC transportation detail prisoner Aljamailawi became angry upon receiving instruction from me. Prisoner spit at me striking me in the face. I raised my hands to prevent from being spit on further and I attempted to back away, however, I backed into the cage which prevented me from exiting and moving away from him (Aljamailawi). He spit at me again striking me in the head and face area as this occurred. I stepped sideways through the aisleway[.] Aljamailawi jumped up from his seat and began to rush toward me, at which time I dispen[s]ed by personal chemical agent, but not before his shoulder struck me in my chest area knocking me off balance.

(*Id.*, PageID.3.) Plaintiff complains that Johnson's report misstates the facts and omits information.

On October 29, 2015, Defendant Burke conducted an administrative hearing on the assault misconduct charge filed by Defendant Johnson. Plaintiff complains that he was not given 24 hours' notice, in order to prepare a defense and respond to the video and documentary evidence. Plaintiff pleaded not guilty and claimed that he acted in self-defense. The hearing officer reported the following statement from Plaintiff:

> Prisoner said that he would like to go to court with this and talk to the state police. Prisoner said his lawyer said don't talk to anybody about it except the lawyer. I told prisoner that was his choice. Prisoner said he plea[d]s the 5th and then added he could not breath[e], that he was trying to defend himself and trying to get off the bus because he did not know what the officer was going to do to him. Prisoner said just because he said two words, he did not deserve to get punched.

(*Id.*). Plaintiff complains that the summary of Plaintiff's position omits Plaintiff's claim that Defendant Johnson was armed with a hand gun when he opened the cage, in violation of MDOC rules, and that Plaintiff reasonably concluded that, when Defendant Johnson reached for the pepper spray, Plaintiff thought he was reaching for the gun to shoot Plaintiff. Plaintiff contends that video and audio evidence was available. Although he acknowledges that he did not see the video, he contends that the video does not show him spitting at Johnson. (*Id.*, PageID.4.) Plaintiff at no

3

time denies spitting on and rushing at Johnson, but he claims that he was acting in self-defense. Plaintiff complains that Defendant Burke's summary indicates only that the video showed Johnson "moving toward [Plaintiff] where he is seated and appears to make a movement toward [Plaintiff]," but does not say that the video showed Johnson punching Plaintiff. (*Id.*) Plaintiff contends that Defendant Burke's conclusions — that (1) "any altercation that took place between the reporter and [Plaintiff] was over before the reporter backed away from prisoner toward the front of the bus"; (2) Plaintiff's "action was intentional, nonconsensual touching . . . done either in anger or with the purpose of abusing or injuring another"; (3) Plaintiff's "free will was [not] overcome because of fear"; and (4) Plaintiff "choices to stand up and charge the reporter" — were arbitrary, capricious, and unsupported by the evidence. (*Id.*, PageID.5.)

Based on his conclusions about the evidence, Defendant Burke found Plaintiff guilty of the misconduct and sanctioned him to 30 days' loss of privileges and 10 days' detention, with no credit for the 7 days served prior to the hearing. Plaintiff argues that the guilty finding is inconsistent with the fact that the Grand Traverse County prosecutor charged and prosecuted Defendant Johnson for assault and battery.

After Plaintiff was convicted of the Class I misconduct charge, the Security Classification Committee met and classified Plaintiff to administrative segregation. On November 16, 2015, while Plaintiff was housed in segregation, Defendant Keeler charged Plaintiff with kicking the bottom of his cell door and pounding on the window with such force that it could be heard from the "bubble" or guard post. Plaintiff alleges that Defendant Keeler fabricated the charge in retaliation for Plaintiff's grievances and complaints against Defendant Johnson. Plaintiff contends that Defendant Keeler routinely voiced his displeasure with Plaintiff's complaints against Johnson, regularly making remarks over the public address system, such as the following: "[Y]ou

f\*\*\*ing Taliban and ISIS Arabs don't deserve a f\*\*\*ing chance to file complaints. Johnson should have shot you dead and a jury out here will find him not guilty"; and "[Y]ou got a good man fired who can't feed his family because you f\*\*\*ing camel jockies come over here and demand the ben[e]fits of our country but want to blow sh\*t up."

Lieutenant Boerema found Plaintiff not guilty of the offense, as the videotape showed that the prisoner across the hall from Plaintiff was the one kicking his cell door. Boerema noted that Keeler made no attempt to verify who was causing the problem and, despite alleging the Plaintiff's cell door had become unsecured, neither Defendant Keeler nor any other officer attempted to re-secure it. Boerema concluded that no evidence supported the misconduct charge.

Plaintiff claims that Defendant Johnson's malicious use of force against Plaintiff violated the Eighth and Fourteenth Amendments and the state torts of intentional infliction of emotional distress, gross negligence, wanton and willful misconduct, and assault and battery. Plaintiff also alleges that Defendant Johnson's fabrication of the misconduct charge against Plaintiff violated the First, Fourth, Eighth, and Fourteenth Amendments, as well as the state torts of libel, defamation, abuse of process, malicious prosecution, gross negligence, and intentional infliction of emotional distress. In addition, Plaintiff alleges that Defendants Burke and McDonald deprived him of access to evidence and a meaningful opportunity to be heard, in violation of the First and Fourteenth Amendments. Finally, Plaintiff alleges that Defendant Keeler filed false misconduct charges against him, both because of his race and because of Plaintiff's exercise of protected speech, in violation of the First and Fourteenth Amendments.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Burke and McDonald

Plaintiff claims that Johnson's major misconduct charge against him was "false," that Defendant McDonald failed to investigate the misconduct charge thoroughly, that Plaintiff did not receive adequate notice of the hearing, and that Defendant Burke's findings were not supported by the record.

A prisoner's ability to challenge a prison misconduct investigation and conviction depends on whether the actions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

7

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his Class-I misconduct conviction for assault and battery resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. He was sanctioned only to 30

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

8

days' loss of privileges, a constitutionally insignificant deprivation. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

Moreover, even assuming that Defendants may in some way be held liable for Plaintiff's later placement in segregation, a highly dubious proposition,[2] segregation does not rise to the level of an atypical or significant deprivation. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g., Baker,* 155 F.3d at 812-23 (two years of segregation

---

[2] The Court notes that Plaintiff utterly fails to allege that Defendants Burke and McDonald participated in the SCC's decision to place Plaintiff in segregation. The SCC's decision may have depended in part on the misconduct conviction, but Defendants Burke and McDonald were not actively involved in the decision.

while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Here, Plaintiff utterly fails to allege that he was placed in segregation without process for the length of time that would be considered atypical and significant. Moreover, he makes no allegation that the type of segregation he suffered was itself atypical and significant. He therefore fails to allege that he had a liberty interest arising out of his segregation.

In sum, because Plaintiff had no liberty interest in the outcome of the misconduct proceeding, Defendants McDonald and Burke did not violate Plaintiff's right to due process in the handling of the misconduct charge.[3]

Plaintiff's assertion that Defendants Burke and McDonald violated state tort law fails to state a claim under § 1983. Claims under § 1983 can only be brought for "deprivation of

---

[3] Plaintiff's claims against Defendant Burke are subject to dismissal for an additional reason. Defendant Burke is a hearings officer, whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearings officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearings officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits arising out of actions taken in their capacities as hearings officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Defendant Burke therefore is absolutely immune from suit.

rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims against Defendants Burke and McDonald, the Court declines to do so. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction over Plaintiff's state-law claims against Defendants Burke and McDonald. Accordingly, Plaintiff's state-law claims against these Defendants will be dismissed without prejudice.

B.  Defendants Johnson and Keeler

Upon initial review, the Court concludes that Plaintiff's allegations against Defendants Johnson and Keeler are sufficient to warrant service of the complaint.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the federal claims against Defendants Burke and McDonald will be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), for failure to state a claim. Plaintiff's state-law claims against Defendants Burke and McDonald will be dismissed without prejudice. The Court will serve the complaint against Defendants Johnson and Keeler.

An Order consistent with this Opinion will be entered.

Dated:   November 30, 2017                                /s/ Janet T. Neff
                                                         Janet T. Neff
                                                         United States District Judge